AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>CELLULAR TELEPHONE ASSIGNED CALL NUMBER 775-857-9475, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 311480455598267 | Case No.  21-MR-932 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of New Mexico, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Distribution and possession with intent to distribute controlled substances; conspiracy to do the same |

The application is based on these facts:
The affidavit of Special Agent Aran Marquis is incorporated herein by reference. AUSA Peter J. Eicker has approved this search warrrant.

☑ Continued on the attached sheet.
☑ Delayed notice of  90  days *(give exact ending date if more than 30 days:*  11/06/2021  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Aran Marquis, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
 telephonically sworn and electronically signed  *(specify reliable electronic means)*.

Date:  07/09/2021 

*Judge's signature*

City and state:  Albuquerque, New Mexico         Kirtan Khalsa, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 775-857-9475, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 311480455598267 | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Aran Marquis, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 775-857-9475, with International Mobile Subscriber Identity Number 311480455598267 (the Target Cell Phone), with no listed subscriber(s), whose service provider is Verizon Wireless Inc., a wireless telephone headquartered at Basking Ridge, New Jersey. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the government is concurrently seeking a separate order that complies with the requirements of the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since 2019. I am currently assigned to investigate matters related to Transnational Organized Crime and Organized Criminal Enterprises. I have investigative training and experience related to analyzing telephonic data and conducting electronic and physical surveillance of subjects.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C § 841, that being the unlawful distribution and possession with intent to distribute a controlled substance; and Title 21 U.S.C § 846, that being conspiracy to distribute and possess with intent to distribute controlled substances, have been committed, are being committed, and will be committed by "JOHNO MESSMER" and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

7. In February of 2021, FBI Albuquerque received information from FBI El Paso that an individual known as "PAYASO," a resident of Chihuahua, Mexico, was looking for customers to buy large quantities of fentanyl pills in Albuquerque, New Mexico. Thereafter, a confidential source (CS) introduced an FBI Undercover Agent (UC) to PAYASO for the purpose of buying 5,000 fentanyl pills in Albuquerque.

8. On April 15, 2021, the UC contacted PAYASO to advise PAYASO he/she was ready to proceed with the purchase. Subsequent to several calls between the UC and PAYASO, the UC was contacted by Luis MORA-HERNANDEZ aka MORENO, who delivered 5,000 fentanyl-based pills to the UC that afternoon. A rapid field test returned a presumptive positive result for the presence of fentanyl in the pills purchased from MORENO.

9. On or about May 3, 2021, the UC and Leonel discussed another transaction for up to 10,000 fentanyl pills over the phone. On or about May 24, 2021, the UC attempted to contact PAYASO with no result. On or about June 1, 2021, the UC was contacted by an individual using a Mexico-based telephone who identified himself as "LEONEL." LEONEL told the UC PAYASO was "in the mountains" and LEONEL would be providing narcotics deliveries going forward. The UC believed that this meant PAYASO had gone into hiding because of possible threats related to his drug trafficking activity. In this and subsequent conversations, the UC and LEONEL determined to meet in Albuquerque for a narcotics transaction in late June or early July 2021.

10. On July 1, 2021, the UC was contacted by LEONEL to coordinate the final details of the transaction. LEONEL told the UC the driver who was making the delivery was named "John." Based on the details described below, photos taken during the meeting, and open-source

and DMV database checks, the FBI determined the man who met the FBI UC is named JOHNO MESSMER and is the user of the Target Cell Phone.

11.     Later on July 1, 2021, the UC was contacted by MESSMER, who was using the Target Cell Phone. MESSMER told the UC he was the courier and could attest to the quality of the product he was about to deliver and apologized for his tardiness in delivery. MESSMER also told the UC he had been driving his 2011 Silver Chrysler Town and Country for 24 hours in order to make this deal happen. During the coordination between MESSMER and the UC, the two exchanged phone calls, text messages, and their shared locations in Google Maps over the Target Cell Phone to coordinate the meeting location for the transaction. At approximately 7:25 PM, MESSMER delivered approximately 10,000 suspected fentanyl-based counterfeit oxycodone pills in exchange for $40,000 in US government funds. This transaction occurred in Albuquerque, NM. A rapid field test returned a presumptive positive result for the presence of fentanyl in the pills purchased from MESSMER. During the delivery, MESSMER told the UC he had departed Las Vegas, NV, to pick up the shipment in Phoenix, AZ, and then traveled directly to Albuquerque, NM. Near the end of the meeting, MESSMER and the UC confirmed each other's phone numbers and MESSMER stated he would ask his boss about the possibility of selling methamphetamine to the UC. From Albuquerque, JOHNO MESSMER planned to drive to Yuma, AZ, to deliver the cash to his boss JAVIER LNU in San Luis Rio Colorado, Mexico. Agents confirmed MESSMER did cross via the San Luis Rio Colorado Port of Entry on July 2, 2021.

12.     Verizon Wireless Inc. records reveal the cellular telephone assigned call number 775-857-9475 has no listed subscriber for the Target Cell Phone.

13. I know from training and experience that drug trafficking is a crime that necessarily involves at least two people – a buyer and a seller. Prior to engaging in the drug transaction, the buyer and seller must communicate and discuss the type of drug to be sold, the quantity, the price, and the location where the sale will take place. I know that it is common for drug traffickers to use cellular phones to conduct these communications.

14. I also know that drug couriers make use of cellular phones to coordinate where to pick up drug loads, discuss delivery locations, and arrange to meet suppliers and provide the suppliers with the drug proceeds following distribution.

15. Based on the aforementioned information, I believe that MESSMER is the user of the Target Cell Phone and that he has used, is using, and will continue to use the Target Cell Phone to facilitate his drug trafficking activities.

## CELLULAR DATA COLLECTION

16. In my training and experience, I have learned that Verizon Wireless Inc. is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone

connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

17. Based on my training and experience, I know that Verizon Wireless Inc. can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless Inc.'s network or with such other reference points as may be reasonably available.

18. Based on my training and experience, I know that Verizon Wireless Inc. can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless Inc. typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

19. Based on the foregoing, there is probable cause to believe that the requested location information described in Attachment B will lead to evidence regarding the activities described above. The location information is necessary to determine the identity and location of JOHNO MESSMER so that law enforcement can conduct physical surveillance of JOHNO

MESSMER and his associates in order to gather further evidence regarding the scope illegal trafficking of narcotics. The location information will allow agents to locate and perform surveillance on JOHNO MESSMER in order to determine from whom he is obtaining narcotics, to whom he is distributing narcotics, to identify possible stash houses, and to determine the identities and roles of all members of the drug trafficking organization.

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct Verizon Wireless Inc. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless Inc.. I also request that the Court direct Verizon Wireless Inc. to

furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless Inc.'s services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

24. AUSA Peter J. Eicker has reviewed and approved this affidavit.

Respectfully submitted,

Aran Marquis
Special Agent
FBI

Subscribed and sworn to telephonically on July 9, 2021.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 775-857-9475 , with International Mobile Subscriber Identity 311480455598267, with no listed subscriber whose wireless service provider is Verizon Wireless Inc., a company headquartered at Basking Ridge, New Jersey.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Verizon Wireless Inc., including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless Inc., Verizon Wireless Inc. is required by law to disclose the Location Information to the government. In addition, Verizon Wireless Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless Inc.'s services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon Wireless Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C §§ 841 and 846 involving JOHNO MESSMER and other criminal associates.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.